# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KENNETH DALE RISHEL, JR., | ) | Case No. 18-40813 |
| | ) | |
| | ) | Chapter 7 |
| **Debtor** | ) | |
| _____ | ) | |
| | ) | |
| PROFESSIONAL GARAGE DOOR SYSTEMS, INC. | ) | Adv. No. 19-04002 |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KENNETH DALE RISHEL, JR., | ) | |
| | ) | |
| **Defendant** | ) | |
| _____ | ) | |

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Complaint of the Plaintiff, Professional Garage Door Systems, Inc. ("Plaintiff"), seeking a judgment holding non-dischargeable a debt of the Defendant and debtor, Kenneth Dale Rishel ("Defendant") from a transaction between the parties in which certain checks written by the Defendant to the Plaintiff were later returned as insufficient and were never paid.

The Court has jurisdiction over this adversary proceeding pursuant to Section 523 of the Bankruptcy Code and 28 U.S.C. § 1334. This case is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) and 157(b)(2)(J).

## **FACTUAL AND PROCEDURAL BACKGROUND**

This administrative proceeding arose out of a dispute between Plaintiff, who manufactures and sells garage doors, and Defendant, who works as a garage door installer. Beginning in May 2015 and ending in January 2018, Plaintiff and Defendant were in business together, with Plaintiff supplying garage doors for Defendant to install.

The court heard testimony from Defendant and from Plaintiff's witness, Mr. Paul Lavy, the Vice President of Wholesale Distribution at Professional Garage Door Systems. Mr. Lavy described his contact with Defendant, and with Plaintiff's customers in general, as arising "in most cases… when there's a problem" with the product or, as in Defendant's case, with the customer's ability to pay for purchased product. *See* Transcript, [R. 42 at 38]. He also testified that he first talked to Defendant in 2017, two years after Defendant and Plaintiff had been in business together. As such, the testimony indicates that Mr. Lavy's contact with Defendant began in earnest after Defendant began having trouble paying for garage doors he had ordered and installed.

The testimony from Defendant and Mr. Lavy, as well as the exhibits from trial, described a course of business between the parties whereby Defendant would pay Plaintiff for garage doors with personal checks, which would often not be submitted for payment for several days. In other cases, the checks would not clear when they were submitted. While Mr. Lavy described the payment arrangement between the parties as a "COD" (cash on delivery) system which required immediate full payment of cash upon each delivery, the testimony made it clear their payment practice was not a true COD arrangement, because Defendant frequently paid for deliveries with checks that were not immediately ready to be cleared by his bank.

According to a statement of Defendant's account with Plaintiff, between May 2015 and January 2018 the balance that Defendant owed to Plaintiff for his orders of garage doors fluctuated greatly. For example, Defendant owed Plaintiff $11,369.06 on August 21, 2015; $12,831.07 on June 27, 2016; and $13,171.88 on July 25, 2016. In the weeks and months following those high balances, Defendant made payments and eventually brought his account down to a zero or negative balance. Furthermore, the evidence at trial showed that many of Defendant's checks to Plaintiff were initially returned as insufficient. Beginning in February of 2017, at least 22 checks written by Defendant to Plaintiff were returned as insufficiently funded and then subsequently paid several days later. This pattern continued throughout 2017 and into 2018, with most of Defendant's returned checks clearing after a few days, but at least 12 checks never being paid. Those unpaid checks were concentrated in the second half of 2017 and early 2018. The last transactions between the parties appear to have occurred in January 2018, with four checks being written, all of which were returned and none of which were ever paid.

On September 25, 2018, Defendant filed a petition for bankruptcy relief under Chapter 7 of the Bankruptcy Code with this Court. In connection with that petition, Defendant filed a schedule of debts showing $46,547.59 of debt to Plaintiff which accounted for the debts from the unpaid checks. Plaintiff in turn filed a proof of claim for the same amount. On February 8, 2019, Plaintiff filed this adversary proceeding in the bankruptcy case, seeking to have the debt from the insufficient checks held non-dischargeable and excepted from Defendant's discharge. Three days later, on February 11, Defendant received a discharge in his underlying bankruptcy case. Plaintiff sought to have the full amount of these insufficient checks excepted from that discharge, either under 11 U.S.C. § 523(a)(2)(A) as a debt incurred by fraudulent misrepresentation, or under § 523(a)(6) as a debt for a willful and malicious injury.

On September 12, 2019, Defendant filed a Motion for Summary Judgment against Plaintiff. On June 11, 2020, this Court granted summary judgment to Defendant on the § 523(a)(2)(A) claim, but denied it as to Plaintiff's § 523(a)(6) claim, finding that there was an issue as to Defendant's intent to harm when he wrote the checks which were eventually returned as insufficient. A trial was set for July 15, 2020 on Plaintiff's claim under § 523(a)(6), primarily so the Court could determine the material issue of Defendant's intent. For the reasons set forth below, the Court finds that Plaintiff has not met its burden in proving that Defendant intended the injurious outcome – Plaintiff's loss of money – when he wrote the checks at issue. Because a plaintiff under § 523(a)(6) must prove the defendant's intent (a "willful injury"), and because this Plaintiff has failed to do so, judgment will be entered in favor of Defendant on the § 523(a)(6) claim.

## DISCUSSION

To succeed on any claim made under § 523(a), a plaintiff must prove by a preponderance of the evidence each element to support a determination that a debt is non-dischargeable. *In re Layne*, 517 B.R. 778, 781 (Bankr. E.D. Ky. 2014). All exceptions to discharge are strictly construed against the creditor. *In re Ward*, 857 F.2d 1082, 1083 (6th Cir. 1988).

Under § 523(a)(6), a debt is non-dischargeable if it arises out of "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). In the Sixth Circuit, "willful injury" and "malicious injury" are separate elements that must both be met for the discharge exception to apply. *In re Berge*, 953 F.3d 907, 914 (6th Cir. 2020). Discussing the willful injury requirement, the Supreme Court has stated that "nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). The Sixth Circuit Court of Appeals has interpreted *Geiger* to mean "that unless 'the actor desires to cause consequences of his act, or

4

believes that the consequences are substantially certain to result from it,' ... he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir.1999).

After considering Plaintiff's exhibits and testimony evidence, the Court concludes that Plaintiff has failed to establish that Defendant acted with the requisite intent to harm in writing the insufficiently funded checks. As described above, the parties' course of dealings for multiple years involved numerous instances when Defendant racked up large balances well beyond $10,000, and then paid that balance off later on as he received payments from his own customers.[1] The evidence further indicated that it was not unusual for a check written by Defendant to be returned as insufficient, and then to be paid later.

These circumstances cut against Plaintiff's contention that Defendant's writing of these checks was done with the intent of never paying them back. To the contrary, they indicate that Defendant frequently paid Plaintiff by providing personal checks for which his bank account was insufficiently funded at the time of their writing, and then made good on the checks by waiting for customers' payments to come in. To this Court, the situation looks like one where the Defendant's poor business planning and payment practices had worked for several years, but fell apart when he came on financial trouble – indicating he intended to repay the insufficient checks at issue here, just as he had eventually made good on insufficient checks in the past. At the very least, Plaintiff has failed to *prove* Defendant's intent not to repay by pointing to the lack of funds in his bank account when the checks were written, and thus has failed to meet its burden with respect to the

---

[1] Defendant testified that this situation arose frequently: "There have been multiple times I've called [Plaintiff, Professional Garage Door] to let them know that the money was in there. They could go ahead and run it. There was also times where I didn't get paid yet and I had to call them and tell them to hold it longer." Tr., [R. 42 at 21].

element of intent as required under § 523(a)(6). *In re Miller*, 310 B.R. 185, 202 (Bankr. C.D. Cal. 2004) (stating that a plaintiff bringing a § 523(a)(6) claim for non-dischargeability based on bad checks must "prove that [the debtor] delivered the markers… with the intent to harm it by failing to repay the credit extended").

## CONCLUSION

Because Plaintiff has failed to prove by circumstantial evidence or otherwise that Defendant intended to not pay back the amounts of the insufficient checks at the time he wrote them, it has not met its burden in proving the debt owed to it is non-dischargeable under § 523(a)(6). Judgment will therefore be entered in favor of Defendant on the § 523(a)(6) claim against him. Having already resolved Plaintiff's other claim against him under § 523(a)(2)(A) in this Court's prior Order granting summary judgment to Defendant on that claim, *see* [R. 39], and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that Defendant Kenneth Dale Rishel, Jr. is entitled to judgment in his favor on all claims asserted against him in the Complaint filed by Plaintiff Professional Garage Door Services, Inc. This is a final and appealable order.

*Thomas H. Fulton*
Thomas H. Fulton
United States Bankruptcy Judge

Dated: August 4, 2020